**ORIGINAL**

# In the United States Court of Federal Claims

No. 16-26C
(Filed: July 13, 2016)

**FILED**

**JUL 1 3 2016**

**U.S. COURT OF FEDERAL CLAIMS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GREGORY P. NESSELRODE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

Tucker Act; 28 U.S.C. § 1491; Pro Se
Plaintiff; Motion to Dismiss; RCFC
12(b)(1); RCFC 12(b)(6); Res Judicata;
Civil Fraud; Student Loan Default

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Gregory P. Nesselrode, Columbus, OH, pro se.

Vito Solitro, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

Before the court are (1) plaintiff's application to proceed in forma pauperis ("IFP"), (2) plaintiff's motion for judgment, (3) defendant's motion to dismiss plaintiff's first amended complaint, (4) plaintiff's motion to strike defendant's motion to dismiss plaintiff's first amended complaint, and (5) plaintiff's motion for leave to file a second amended complaint. For the reasons set forth below, the court grants plaintiff's IFP application and defendant's motion to dismiss plaintiff's first amended complaint. In addition, the court denies plaintiff's motion for leave to file a second amended complaint and denies, as moot, the remaining motions.

**I. BACKGROUND**

**A. Factual History**

Neither the facts nor the allegations in plaintiff's first amended complaint are clearly articulated. However, from the appendix to plaintiff's original complaint,[1] the court gleaned the following facts: (1) from 1992 to 2013, plaintiff borrowed various sums of money from the

---

[1] The court deems the appendix as having been refiled with plaintiff's first amended complaint.

federal government to finance his education at several institutions,[2] App., Ex. E; (2) at some point, plaintiff's student loans were financed by Direct Loans, Sallie Mae, and Navient, id. at Exs. A-C; (3) according to plaintiff's credit report, as of November 22, 2015, he had outstanding debts of $16,068 and $49,456, id. at Ex. D; and (4) according to plaintiff's federal student aid summary, as of November 26, 2015, he had two outstanding loans—the first, a direct consolidated unsubsidized loan of $12,844, made on September 18, 2000, and the second, a direct consolidated subsidized loan of $39,574, made on September 18, 2000, id. at Ex. E.[3]

Furthermore, it appears that the gravamen of plaintiff's complaint is that the United States Department of Education erroneously claims that he defaulted on two of his loans. Am. Compl. 6-7. Finally, it appears that plaintiff alleges various statutory violations by defendant, as well as fraud and breach of contract claims, id. at 6-7, and seeks both injunctive and monetary relief, id. at 19-20.

### B. Procedural History

In 2013, plaintiff sued the United States Department of Education in the United States District Court for the Western District of Washington ("Washington District Court"). App., Ex. L. On August 6, 2014, the Washington District Court granted defendant's motion for summary judgment, finding that it lacked jurisdiction over plaintiff's claim that defendant wrongfully accused him of defaulting on two consolidated school loans. Id. at 2. On April 14, 2015, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") held "that the questions raised in [plaintiff's] appeal are so insubstantial as not to require further argument." App., Ex. M at 1. On June 22, 2015, the Ninth Circuit denied plaintiff's motion for reconsideration en banc and on July 1, 2015, it issued a mandate. Id. at 2-3.

Plaintiff filed his original complaint and IFP application on January 7, 2016. Two months later, on March 7, 2016, defendant filed a motion to dismiss. Shortly thereafter, on March 22, 2016, plaintiff filed a motion to amend his complaint. That motion was granted, as of right, the next day. On April 22, 2016, plaintiff filed a motion for judgment and on May 3, 2016, defendant again filed a motion to dismiss. On May 12, 2016, plaintiff moved to strike the motion to dismiss and on June 17, 2016, plaintiff moved, for the second time, to amend his complaint.

---

[2] Disbursements of federal loan monies were made to (1) Front Range Community College-Westminster Campus, (2) Colorado State University, (3) Linn-Benton Community College, (4) The University of Montana, and (5) Montana State University Bozeman. App., Ex. E.

[3] In his first amended complaint, plaintiff refers to the two loans as loan number 15 and loan number 16, presumably because they appear on lines 15 and 16 of his federal student aid summary.

## II. LEGAL STANDARDS

### A. <u>Pro Se</u> Plaintiffs

The United States Court of Federal Claims ("Court of Federal Claims") holds pleadings of a <u>pro se</u> plaintiff to less stringent standards than those of litigants represented by counsel. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." <u>Ruderer v. United States</u>, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." <u>Minehan v. United States</u>, 75 Fed. Cl. 249, 253 (2007); <u>see also</u> <u>Kelley v. Sec'y, U.S. Dep't of Labor</u>, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for <u>pro se</u> litigants only."); <u>Bernard v. United States</u>, 59 Fed. Cl. 497, 499 (noting that <u>pro se</u> plaintiffs are not excused from satisfying jurisdictional requirements), <u>aff'd</u>, 98 F. App'x. 860 (Fed. Cir. 2004). As the Court of Federal Claims stated in <u>Demes v. United States</u>, "[w]hile a court should be receptive to <u>pro se</u> plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed. Cl. 365, 369 (2002).

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998); <u>see also</u> <u>Matthews v. United States</u>, 72 Fed. Cl. 274, 278 (2006) (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>Ex parte McCardle</u>, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court <u>sua sponte</u> may challenge the court's subject matter jurisdiction at any time. <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." <u>United States v. King</u>, 395 U.S. 1, 4 (1969). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." <u>Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands</u>, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." <u>United States v. Testan</u>, 424 U.S. 392, 398 (1976). Instead, the

substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."[4] Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

"A statute or regulation is money-mandating for jurisdictional purposes if it can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties it imposes." Ferreiro v. United States, 501 F.3d 1349, 1351-52 (Fed. Cir. 2007) (citations and internal quotation marks omitted). Such a determination is made pursuant to a two-part test:

> First, the court determines whether any substantive law imposes specific obligations on the Government. If that condition is met, then the court proceeds to the second inquiry, "whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes."

Samish Indian Nation v. United States, 657 F.3d 1330, 1335 (Fed. Cir. 2011) (quoting United States v. Navajo Nation, 556 U.S. 287, 290-91 (2009) (internal quotation marks omitted)). In other words, "to satisfy the jurisdictional requirements of the Tucker Act, the plaintiff must point to an independent, substantive source of law that mandates payment from the United States for the injury suffered." Johnson v. United States, 105 Fed. Cl. 85, 91 (2012).

In addition, to fall within the court's jurisdiction, any claim against the United States filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim).

### C. Motions to Dismiss

In the instant action, defendant seeks the dismissal of plaintiff's case on two grounds. First, defendant contends that this court lacks subject matter jurisdiction pursuant to RCFC 12(b)(1). Second, defendant contends that plaintiff fails to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6).

In ruling on motions to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). With respect to a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Although complaints filed by plaintiffs proceeding

---

[4] The Rules of the Court of Federal Claims ("RCFC")—plaintiff cites RCFC 8(a)(2), 9(b), 9(e), and 9(k)—are not a source of substantive rights for money damages.

pro se are held to "less stringent standards than formal pleadings drafted by lawyers," Haines, 404 U.S. at 520-21, a plaintiff proceeding pro se is not excused from meeting basic jurisdictional requirements, Henke, 60 F.3d at 799. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). To survive a motion to dismiss under RCFC 12(b)(6), a plaintiff must include in the complaint "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp., 550 U.S. at 556). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp., 550 U.S. at 563. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

## III. DISCUSSION

### A. Dismissal Is Appropriate Under RCFC 12(b)(1)

The court lacks subject matter jurisdiction over plaintiff's statutory claims, over plaintiff's civil fraud claim, and over plaintiff's claims for equitable relief. Dismissal of these claims is therefore appropriate under RCFC 12(b)(1).

#### 1. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Statutory Claims

In his first amended complaint, plaintiff alleges that defendant violated a number of provisions of the United States Code. The court addresses each of these provisions in turn.

##### a. 18 U.S.C. § 1031

Section 1031 of title 18 of the United States Code is captioned "Major fraud against the United States."[5] 18 U.S.C. § 1031 (2012). It is a statute that makes it a crime "to defraud the United States," or "to obtain money or property by means of false or fraudulent pretenses, representations, or promises," with respect to "any grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance" and states the penalties for such a crime. Id. Not only is the statute not money-mandating, but as a criminal statute, is not enforceable against the United States. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994) ("[The Court of Federal Claims] has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." (internal quotation marks omitted)).

---

[5] Plaintiff cites this statute at pages ii, iv, 2, 6, and 7 of his first amended complaint.

#### b. 20 U.S.C. § 1092(a)

Section 1092(a) of title 20 is captioned "Information dissemination activities."[6] 20 U.S.C. § 1092(a) (2012). It is a section of the Higher Education Act ("HEA") that lists the types of information that eligible institutions that participate in certain student financial assistance programs must have available for production to prospective and enrolled students of that institution. Id. It is not money-mandating. See Johnson, 105 Fed. Cl. at 92 (noting that neither the HEA nor its corresponding regulations are a "money-mandating source of law").

#### c. 20 U.S.C. § 1221-1

Section 1221-1 of title 20 is captioned "National policy with respect to equal educational opportunity."[7] 20 U.S.C. § 1221-1. It states that it is "the policy of the United States of America that every citizen is entitled to an education to meet his or her full potential without financial barriers." Id. Statutory provisions merely reciting laudable goals are not money-mandating. See Dziekonski v. United States, 120 Fed. Cl. 806, 810 (noting that a statute describing a "declared policy" is not money-mandating).

#### d. 28 U.S.C. § 1500

Section 1500 of title 28 is captioned "Pendency of claims in other courts."[8] 28 U.S.C. § 1500. It is a jurisdictional statute that simply states that this court lacks jurisdiction over a claim "if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." United States v. Tohono O'Odham Nation, 563 U.S. 307, 311 (2011). This jurisdictional limitation, imposed on the court by Congress, is not money-mandating.

#### e. 31 U.S.C. § 1304

Section 1304 of title 31 is captioned "Judgments, awards, and compromise settlements."[9] 31 U.S.C. § 1304 (2012). Although it relates to the appropriation of federal funds for the payment of "final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law" in suits brought against the United States, id., it, standing alone, is not money-mandating. See Samish Indian Nation, 657 F.3d at 1334 (affirming the trial court's determination that an appropriation is "merely a budgetary mechanism . . . [and] could not impose a money-mandating duty on the Government.").

---

[6] Plaintiff cites this statute at pages 4 and 10 of his first amended complaint.

[7] Plaintiff cites this statute at pages 4 and 10 of his first amended complaint.

[8] Plaintiff cites this statute at page 5 of his first amended complaint.

[9] Plaintiff cites this statute at pages ii, v, 2, 9, and 12 of his first amended complaint.

### f. 44 U.S.C. § 3102

Section 3102 of title 44 is captioned "Establishment of program management."[10] 44 U.S.C. § 3102 (2012). Its purpose is to provide for the management of federal agency records and consequently is not money-mandating.

### g. 44 U.S.C. §§ 3601-3606

Finally, plaintiff relies on not just one section but an entire chapter within a title, arguing that chapter 36 of title 44,[11] captioned "Management and Promotion of Electronic Government Services," 44 U.S.C. §§ 3601-3606, provides a basis for the government's liability. The chapter provides for the "development and enhancement" of "the use by the Government of web-based Internet applications and other information technologies [to] enhance the access to and delivery of Government information and services to the public, other agencies, and other Government entities; or . . . bring about improvements in Government operations that may include effectiveness, efficiency, service quality, or transformation." Id. §§ 3601, 3605. Clearly, the chapter is not money-mandating.

## 2. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Civil Fraud Claim

In addition to alleging a violation of a criminal fraud statute, plaintiff claims that defendant fraudulently or mistakenly stated that he defaulted on two of his loans. Am. Compl. 13. In support of his argument, plaintiff relies on RCFC 9(b). Id.

Pursuant to RCFC 9(b), plaintiff must plead "the circumstances constituting fraud . . . with particularity." The purpose of pleading fraud with particularity is to allow formulation of a responsive pleading and guard parties from baseless claims. Tyger Constr. Co. v. United States, 28 Fed. Cl. 35, 53 (1993). "Fraud allegations should contain references to time, place, and manner of the fraud." Id. A "heightened fact pleading of specifics," is not required, "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570. If a plaintiff fails to meet the requirements of RCFC 9(b), the Court of Federal Claims may dismiss the complaint without prejudice or allow the deficiency to be "cured by a later disclosure." Jana, Inc. v. United States, 41 Fed. Cl. 735, 741 (1998).

In the present case, irrespective of whether plaintiff has met his burden under RCFC 9(b), his fraud claim would not be remediable in the Court of Federal Claims. A claim of fraud sounds in tort, Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997), and the Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort, 28 U.S.C. § 1491(a)(1). Rather, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-80, jurisdiction over tort claims lies exclusively in United States district courts. See Brown, 105 F.3d at 623 (holding that because the plaintiffs' fraudulent assessment and fraudulent takings claims sounded in tort, the court lacked jurisdiction). The only exception to that rule is for a tort

---

[10] Plaintiff cites this statute at pages 11, 13, and 14 of his first amended complaint.

[11] Plaintiff cites this statute at pages 12 and 14 of his first amended complaint.

claim that arises from a breach-of-contract claim. See Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002) ("[W]here a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims[.]"); Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 745 (1980) ("Where . . . a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract."). As discussed below, plaintiff fails to state claims for breach of contract. See infra Sections III.B. 1-2. Thus, to the extent that plaintiff is alleging a claim of fraud based on a breach of contract, the court lacks jurisdiction to entertain it.

### 3. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims for Equitable Relief

Next, plaintiff seeks the following equitable relief from this court: (1) a declaration that he is not in default on his two federal student loans, (2) the consolidation of all of his outstanding federal student loans, (3) the removal from his credit report of any reference to the two defaulted federal student loans, and (4) removal of two loan amounts—an April 25, 2013 loan of $ 3,362 and an October 24, 2013 loan of 26,870, which total $30,232—from his federal student loan records. Am. Compl. 20.

Generally, the Court of Federal Claims lacks the ability to award equitable relief. See Bowen v. Massachusetts, 487 U.S. 879, 905 (1988) (holding that the Court of Federal Claims lacks "the general equitable powers of a district court to grant prospective relief"); Brown, 105 F.3d at 624 (holding that the Tucker Act does not provide independent relief through declaratory judgments); Stephanatos v. United States, 81 Fed. Cl. 440, 445 (2008) (explaining that the court "has no authority to grant equitable relief 'unless it is tied and subordinate to a money judgment'" (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998))). However, the Tucker Act does authorize the court to grant equitable relief under limited circumstances:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2); see also id. §§ 1492(b)(2) (providing the court with jurisdiction to award declaratory and injunctive relief in bid protests), 1507 (providing the court with jurisdiction to issue a declaratory judgment under 26 U.S.C. § 7428). Here, as explained below, plaintiff fails to state a breach-of-contract claim upon which relief, in the form of money damages, may be granted. See infra Sections III.B. 1-2. Thus, the equitable relief plaintiff seeks does not arise as "an incident of and collateral to" a money judgment. Accordingly, the Court of Federal Claims lacks the authority to grant equitable relief in this case.

As to plaintiff's remaining claims, although they are properly before this court, plaintiff fails to state claims upon which relief may be granted.

### B. Dismissal Is Appropriate Under RCFC 12(b)(6)

Plaintiff fails to state a claim under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-09 (2012). Plaintiff also fails to state a breach-of-contract claim. Dismissal of these claims is therefore appropriate under RCFC 12(b)(6).

#### 1. Plaintiff Fails to State a CDA Claim

In his first amended complaint, plaintiff cites several sections of the CDA, which is a money-mandating statute that permits the Court of Federal Claims to entertain suits arising from government procurement contracts.[12] See U.S. Sur. Co. v. United States, 83 Fed. Cl. 306, 309 (2008) ("The Contract Disputes Act of 1978 . . . is such a money-mandating statute. It authorizes this Court to adjudicate a claim for monetary damages arising from 'any express or implied contract . . . entered into by an executive agency for . . . the procurement of construction, alteration, repair or maintenance of real property' filed within twelve months of a contracting officer's final decision concerning the claim."). However, plaintiff does not claim, nor can he, to have entered into a procurement contract with the United States, such that recourse in this court pursuant to the CDA is appropriate. Thus, he fails to state a claim upon which relief can be granted.

#### 2. Plaintiff Fails to State a Breach-of-Contract Claim

In addition to alleging a violation of the CDA, plaintiff claims that defendant breached the Master Promissory Note ("MPN"). Am. Compl. 9-13. In support of his breach-of-contract claim, plaintiff attaches a blank MPN to his first amended complaint. App., Ex. K. The MPN is a United States Department of Education form captioned "Direct Loans."[13] It "is used in connection with many student loans across the country," and "incorporates the [HEA] and its associated regulations." Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 638 (7th Cir. 2015). Plaintiff's blank MPN contains the following seven sections: (1) "Section A: Borrower Information"; (2) "Section B: School Information"; (3) "Section C: Borrower Request, Certification, Authorizations, and Understandings"; (4) "Section D: Promise to Pay"; (5) "Section E: MPN Terms and Conditions"; (6) "Section F: Important Notices"; and (7) "Section G: Instructions for Completing the MPN." App., Ex. K. Id. According to plaintiff, who relies on a subsection of the MPN captioned "Acceleration and Default," defendant failed to consolidate plaintiff's loans as mandated under 20 U.S.C. § 1092(a). Am. Compl. 10.

---

[12] Plaintiff cites to the CDA at pages ii, iv-v, 2, 9-10, and 12-13 of his first amended complaint.

[13] The form is also captioned (1) "Federal Direct Stafford/Ford Loan," (2) "Federal Direct Unsubsidized Stafford/Ford Loan," (3) "Master Promissory Note," and (4) "William D. Ford Federal Direct Loan Program." App., Ex. K.

Plaintiff cannot prevail on his breach-of-contract claim because he has not established that the United States was obligated to consolidate his loans. There is nothing within the text of the MPN that imposes a duty on the United States to consolidate a borrower's loans. And, as noted above, the section of the HEA that plaintiff relies on—20 U.S.C. § 1092(a)—merely lists the types of information that institutions participating in the United States Department of Education's financial assistance programs must have available for prospective or enrolled students. It does not provide that the United States must consolidate borrowers' loans. Indeed, other sections of the HEA provide that loan consolidation is optional. See, e.g., 20 U.S.C. §§ 1087i-2(a) ("Temporary loan consolidation authority"); 1099d(b)(3)(L) ("Consolidation"). In the absence of any duty of the United States to consolidate plaintiff's loans, plaintiff fails to state a claim for breach of contract upon which relief can be granted.

### C. Consideration of Plaintiff's First Amended Complaint Is Barred by the Doctrine of Res Judicata

Ultimately, the doctrine of res judicata bars this court's consideration of plaintiff's first amended complaint. See Campos v. OPM, 636 F. App'x 798, 799 (Fed. Cir. 2016) (unpublished per curiam decision) ("[E]ven though, in a later suit, a party might present the court with new evidence that calls into question the original judgment, res judicata does not permit the court to reopen that judgment."). Res judicata, as the term is commonly used, encompasses the related concepts of claim preclusion and issue preclusion. Nasalok Coating Corp. v. Nylok Corp., 522 F.3d 1320, 1323 (Fed. Cir. 2008); Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed. Cir. 2006). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). In contrast, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel." Id. (citation omitted).

For claim preclusion to apply, "there must be (1) an identity of parties or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." Sharp Kabushiki Kaisha, 448 F.3d at 1370 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5 (1979)); see also Nevada v. United States, 463 U.S. 110, 129-30 (1983) ("[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1876))), quoted in Phillips/May Corp. v. United States, 524 F.3d 1264, 1267-68 (Fed. Cir. 2008); Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 640 (Fed. Cir. 1989) (noting that while a "dismissal on the merits carries res judicata effect," a "dismissal for want of jurisdiction does not").

For issue preclusion to apply, the following four elements must be satisfied:

> (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994). "The underlying rationale of the doctrine . . . is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." Id. The doctrine therefore "protects [the party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54 (1979).

The instant case is plaintiff's second attempt to secure legal redress for alleged wrongs regarding his student loans. As noted above, plaintiff's first attempt was in Washington District Court. In that case, the court granted defendant's motion for summary judgment. Specifically, the court held that (1) 20 U.S.C. § 1092(c),[14] the statute relied upon by plaintiff, "does not require disparate and independent entities to coordinate their monthly statements or collection procedures"; (2) plaintiff failed to present any evidence that reports submitted by defendant to credit reporting agencies were "fraudulent or even incorrect"; (3) plaintiff failed to present any evidence that "defendant's garnishment of his 2012 tax refund was unauthorized" in light of his having defaulted on his student loans; (4) it lacked the authority to grant plaintiff's request for injunctive relief in the form of an order directing defendant to consolidate loans held by the State of Colorado Collections Department with defendant's loans; and (5) plaintiff failed to present any evidence that defendant owed him a fiduciary duty.[15] App., Ex. L at 2-5.

Here, all three of the claim preclusion factors have been met. First, there is no dispute that the parties are identical to those in the prior litigation—in both cases, plaintiff sued the

---

[14] In the instant action, plaintiff relies on subsection (a) rather than subsection (c) of 20 U.S.C. § 1092.

[15] To the extent that plaintiff is seeking this court's review of the decisions of the Washington District Court and the Ninth Circuit, this court lacks jurisdiction to do so. See generally U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 27 (1994) ("Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ . . . [a] collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system."); Joshua, 17 F.3d at 380 ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts . . . relating to proceedings before those courts.").

United States.[16] Second, it cannot be disputed that the claims in both cases are based on the same transactional facts: plaintiff's application for and receipt of federal student loan monies between 1992 and 2013, and defendant's declaration that plaintiff was in default on a direct consolidated unsubsidized loan of $12,844 and a direct consolidated subsidized loan of $39,574, both made on September 18, 2000. Third, it is undisputed that the prior litigation, wherein the court resolved a motion for summary judgment, resulted in a judgment on the merits. See Kunkes v. United States, 78 F.3d 1549, 1550 n.2 (Fed. Cir. 1996) ("Unlike a Rule 12(b)(6) motion, a summary judgment motion does not simply test the sufficiency of the complaint; it involves examination of material outside the complaint, and determines whether on the undisputed facts presented in that material, the movant is entitled to judgment as a matter of law. . . . Accordingly, for purposes of the appeal we treat the matter not as a dismissal but as an entry of judgment . . . ."); Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) (noting that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure "seeks a judgment on the merits of a case"). Having determined that plaintiff's current complaint is barred by the doctrine of claim preclusion, the court need not consider the effect of issue preclusion.

### D. Plaintiff's Motion to File a Second Amended Complaint Is Futile

Despite the fatal deficiencies in plaintiff's first amended complaint, the court concludes that plaintiff's motion to file a second amended complaint is futile. On June 17, 2016, after briefing on defendant's motion to dismiss the first amended complaint was complete, plaintiff sought leave to file a second amended complaint. In support of his motion, plaintiff claims that he is now in possession of evidence—the MPN—that was not previously considered by the Washington District Court before it rendered its decision.

RCFC 15(a) governs the amendment of pleadings before trial and states that "[a] party may amend its pleadings once as a matter of course within . . . 21 days after service of the pleading; or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under RCFC 12(b), (e), or (f), whichever is earlier." Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." RCFC 15(a). In Foman v. Davis, the United States Supreme Court explained that the mandate set forth in RCFC 15(a) "is to be heeded." 371 U.S. 178, 182 (1962). It explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

---

[16] Although defendant in the prior litigation is identified as the "Department of Education," its full name is the United States Department of Education, which is an agency of the United States government.

> futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Id.

Whether a court grants or denies a motion for leave to amend the complaint falls within its discretion, id., and a court "ought to exercise liberally its discretion to grant leave to amend," Wolfchild v. United States, 101 Fed. Cl. 54, 64 (2011); see also Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982) (explaining that Rule 15 of the Federal Rules of Civil Procedure "evinces a bias in favor of granting leave to amend"). Nevertheless, leave to amend "should not be given automatically." Chitimacha Tribe of La., 609 F.2d at 1163. The existence of "any one" of the reasons articulated in Foman may justify denial of a motion for leave to amend. Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991); accord Hays v. United States, 16 Cl. Ct. 770, 772 (1989) (noting that the criteria set forth in Foman "are in the disjunctive, i.e., satisfaction of one is sufficient to deny the motion"); see also Te-Moak Bands of W. Shoshone Indians of Nev. v. United States, 948 F.2d 1258, 1261-64 (Fed. Cir. 1991) (disallowing amendment of the pleadings due to delay and failure to cure deficiencies earlier). Where amendment would be futile, it should not be allowed. See Leider v. United States, 301 F.3d 1290, 1299 n.10 (Fed. Cir. 2002) (holding that where the undisputed facts do not support the addition of a new claim, amendment of the complaint is futile and should not be allowed); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989) (holding that where an additional prayer for relief would not change the outcome of the case, amendment of the complaint is futile and should not be allowed); Ishler v. United States, 115 Fed. Cl. 530, 541 (2014) (holding that where plaintiff "fails to explain how amendment would cure any of the jurisdictional defects in his complaint," amendment of the complaint is futile and should not be allowed).

In this case, allowing plaintiff to amend his complaint for a second time is futile. Plaintiff fails to put forth any new facts or legal argument that would cure the deficiencies in his first amended complaint. In other words, nothing in plaintiff's proposed second amended complaint would (1) alter this court's conclusion that it lacks subject matter jurisdiction over plaintiff's non-money-mandating statutory claims, plaintiff's common law civil fraud claim, or plaintiff's claims for equitable relief; (2) cure plaintiff's failure to state either a CDA or common law breach-of-contract claim; or (3) alter this court's ability, under the doctrine of res judicata, to review the claims already decided by the Washington District Court and the Ninth Circuit. Thus, in an exercise of its discretion and because the interest of justice would not otherwise be served, plaintiff's motion for leave to file a second amended complaint is denied.

### E. Plaintiff's IFP Application Is Granted

Finally, as noted above, plaintiff filed, concurrent with his original complaint, an IFP application. Pursuant to 28 U.S.C. § 1915, courts of the United States are permitted to waive filing fees and security under certain circumstances. See 28 U.S.C. § 1915(a)(1). Plaintiffs wishing to proceed IFP must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and

their belief that they are entitled to redress. Id. Here, plaintiff has satisfied all three requirements. The court therefore grants plaintiff's application and waives his filing fee.

## IV. CONCLUSION

As set forth above, the court **GRANTS** plaintiff's IFP application, **DENIES** as moot plaintiff's motion for judgment, **GRANTS** defendant's motion to dismiss plaintiff's first amended complaint, **DENIES** as moot plaintiff's motion to strike defendant's motion to dismiss plaintiff's first amended complaint, and **DENIES** plaintiff's motion for leave to file a second amended complaint. Plaintiff's first amended complaint is **DISMISSED.** The clerk is directed to enter judgment accordingly and shall not award costs.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge